The opinion of the court was delivered by
Watkins, J.
The claim of the plaintiff is that in October, 1889, whilst in the city of New York he made a contract with the Pennsylvania Railroad Company for the transportation of himself and family, consisting of nine persons, over its road from that city to Cincinnati, and from thence to New Orleans via the Queen & Crescent route — these two roads connecting and constituting a through *697 route from New York to New Orleans. His averment is that the contract for transportation of himself and family entitled him to transportation of his and their baggage from said point of departure to his place of destination, and the said railroad company undertook the safe carriage and transportation of himself, family and baggage over its own and connecting lines, and therefor issued to him tickets for passage and tags, or checks, for baggage, counterparts of the latter being ai the same time attached to the several pieces of his baggage when it was placed in said company’s possessionand custody.
Upon his arrival at the city of New Orleans he contracted to pay to the defendant transfer company the sum of $4.50 to procure his luggage at the railroad depot and haul it to his residence in said city, and surrendered to said company the checks he had received therefor from the railroad company. His further averment is that said transfer company took charge of his said baggage — the intrinsic value of which he fixes at $5000 — and hauled same to his residence and within his grounds, but declined and arbitrarily refused to deliver same to him (notwithstanding he proffered to pay the compensation agreed upon) on the pretext that there was due on the baggage an extra charge of $49.20 for transportation thereof by said Pennsylvania Railroad Company. He further avers that he refused and declined to pay said extra charge, and said transfer company persisted in its refusal to deliver his luggage otherwise, and against his protest removed same from his premises, and that he only recovered same by means of a writ of sequestration.
On the trial there was judgment for the defendant, and the plaintiff has appealed.
While there is no question raised on the part of the defendant transfer company — the only party cited — as to the character of the plaintiff’s contract with the railroad company, the value of the property, the facts in reference to its possession of the baggage, or of its refusal and declination to deliver the same, yet its contention in brief and argument is that there is not now and never has been “any dispute as to the ownership” of the property, and insists that when the plaintiff refused to pay the extra charge of $49.20, he reconveyed the baggage to the railroad depot and delivered the checks to the railroad company, by whom same are held subject to his order, and that the plaintiff’s right of action is against the Louisville & Nashville Railroad Company only.
*698 In the plaintiff’s petition there is a distinct averment “ that he fears ¡that the New Orleans Transfer Company, either directly or through its agents and the Louisville & Nashville Railroad Company, having petitioner’s luggage, and that of his family, and which your petitioner avers to be a tortuous possession, without right or authority in law, may send the property out of the jurisdiction of the court during the pendency of this suit.” His prayer is that the property be sequestered by the sheriff, it “ being in the possession of the New Orleans Transfer Company, or under its control, or ip the possession of its agent, the Louisville & Nashville Railroad Company;” and that he be decreed the owner thereof. The defendant’s answer was a general denial. Instead of the transfer company declining the issue of ownership, it put same at issue by its answer. When the plaintiff ruled the transfer company to show cause why he should not be permitted to bond the property pendente lite, it made resistance and defeated his application. On the trial, its counsel introduced and interrogated several witnesses in defence of plaintiff’s pretensions, and obtained a judgment rejecting his d.emand. We think it is too late for it to insist that there is no issue with it asto the ownership, or possession, for us to try and determine.
Upon plaintiff’s arrival on the train he made a contract, as alleged, with an agent of the transfer company, for the delivery of his baggage at his residence, and surrendered to him his checks, and for which service he agreed to pay him the sum of $4.50.
Mr. Faust, one of defendant’s witnesses, testifies that he was, at the time, the manager of the transfer company. He states — using his own words: “ I.tried to explain (to Mr. Da Ponte) that it was a customary thing for the New Orleans Transfer to collect these charges; that the transfer company had no other interest than the delivery of the baggage; that we were simply the agents of the Louisville & Nashville, as well as all other lines running to New Orleans,” etc. Notwithstanding this witness, as manager of the defendant company, admits that company’s contract with the plaintiff, and that it was an undertaking to transfer his baggage, as the agent of the Louisville & Nashville Railroad Company, he confesses that he retained in the office of the company the plaintiff’s checks, for some time, and then surrendered them to the Louisville & Nashville Railroad Company.
“ Q. Where are the checks that were delivered by Mr. Da Ponte to *699 the messenger of the New Orleans Transfer Company? Where are they?”
“A, In the possession, of the Louisville & Nashville Railroad. They were delivered to them.”
He states that they were afterward returned and remained in the office of the transfer company for some time.
In order to recover possession of his property, plaintiff was compelled to give bond to the sheriff for a large sum. His checks were retained by the defendant, or its agent, and have never been returned, or tendered to him. Had the defendant set out the true nature of its engagement in its answer, disavowed any interest in the transaction, and surrendered 'the plaintiff’s checks, or tendered them to him, in open court, it could have been exonerated entirely. But by the course it did pursue, the controversy has been prolonged, and judgment rendered against the plaintiff, who has been put to the expense of an appeal in order to secure the restitution of his property, or what amounts to the same thing, the cancellation of his forthcoming bond. He is entitled to this relief at our hands.
It is, therefore, ordered and decreed that the judgment appealed from be annulled and reversed, and it is now ordered and decreed that there be judgment in plaintiff’s and appellant’s favor, recognizing plaintiff’s ownership of the property, and maintaining his sequestration, at defendant’s cost in both courts.